### Commonwealth v. Davis

*Richard Lewis, Assistant District Attorney,* for Commonwealth.

*Thomas Beckley,* for defendant.

DOWLING, *J.,* December 9, 1977 — The law of the Commonwealth requires a peace officer making an arrest beyond his jurisdiction to be "in pursuit" of the offender. The matter before us requires a discussion as to whether this mandates a "hot pursuit" to "head 'em off at the pass" in the manner portrayed by the Apaches pursuing at breakneck speed the terrified passengers in the film "Stage Coach;" the unperturbable pace but "deliberate speed" with which the divine hunter pursued in Francis Thompson's "Hound of Heaven;" perhaps the more lethargic chase which Meade followed the broken legions of Lee after Gettysburg, or a less dramatic endeavor as illustrated in the instant factual situation.

Alva Straw was crossing, in a westerly direction, the Market Street bridge which not only spans the Susquehanna River but also connects the counties of Dauphin and Cumberland. She brought her vehicle to a stop in obedience to a traffic signal at the western end of the bridge. Unfortunately for her, defendant, Gerald Davis, who was following to her

rear, carrying a blood alcoholic content of .23 did not, and a rear end collision ensued.

The situs of the impact was in Dauphin County, just east of the Borough of Wormleysburg line in Cumberland County, whose police chief, arriving first on the scene, ordered the cars off the bridge to an adjacent parking lot — a short distance — but one which crossed county lines. Patrolman Spicer of the Harrisburg Police Department was dispatched to the scene, arriving approximately 20 minutes after the accident. He made an investigation which included certain observations of defendant who was in the parking lot and then arrested him for driving under the influence. This supplies the scenerial conflict; i.e., accident in Dauphin County and arrest in Cumberland County by a Harrisburg police officer.

Defendant has filed a motion to suppress the evidence and dismiss the charges on the grounds that the arrest was illegal because the arresting officer was beyond the territorial limits of the political subdivision employing him and does not come within the statutory exception permitting such arrest in situations where the officer is in pursuit of the offender.

The act in question provides: "Any police officer in the employ of a county, city, borough, town or township may arrest, with or without a warrant, any felon or person who has committed a misdemeanor or summary offense beyond the territorial limits of the political subdivision employing such officer for such offense committed by the offender within the political subdivision employing the police officer if such officer continues in pursuit of the offender after commission of the offense: Provided, however, That a police officer shall exer-

cise only the power of arrest that he would have if he were acting within the territorial limits of the political subdivision employing him." As amended November 2, 1973, P.L. 330, sec. 1, immediately effective, 19 P.S. §11.

The only case research has disclosed which construes this statute in the present context is U.S. v. Getz, 381 F. Supp. 43 (E.D. Pa. 1974), where the United States District Court for the Eastern District of Pennsylvania rejected the fender-smashing Hollywood style chase in favor of a less accelerated interpretation.

In the Getz case, two bank robbers were seized at the Old Stone Inn by Easton police, a spa outside their jurisdiction. The arresting officers had received notice of the robbery and were immediately dispatched to the scene. En route, they heard over their radio that a car answering the description of the get-away vehicle was observed heading south on Route 611. The officers immediately proceeded to this highway and learned that they had responded to a false alarm. They then received another communication that a car answering the description was parked near the tavern, proceeded there and arrested defendants some half-hour after being initially dispatched to the scene.

The court observed that the statute does not specify that the officers must be in "hot" pursuit, only that " 'such officer continues in pursuit of the offender. . . .' " Judge Troutman noted the officers proceeded diligently in their search for the fleeing robbers and that there was no hiatus or interruption of their efforts and concluded that the arrest, while made beyond the territorial limits of the officers' jurisdiction, occurred while they were in pursuit of the felons within the purview of 19 P.S. §11.

While a number of jurists seem to delight in freeing the guilty on devitalizing technicalities, we decline to participate in this socially suicidal tendency and when the law supports a realistic approach which upholds the evil to be prevented, we are not inclined to reject evidence of guilt. Here, the officer went directly to the accident situs and, after his initial investigation, he immediately sought defendant by going to him, or pursuing him, if you will, from the scene to his nearby location in the parking lot.

Thus we conclude that under all the circumstances we can say, as did the French King to the Dauphin and the Duke of Burgundy "You see this chase is hotly follow'd, friends." (Henry V, Act 2, Scene 4.)

Defendant's application to suppress evidence and dismiss the charges is denied.